216 So.2d 529 (1968)
Jerry NEVELS
v.
STATE of Mississippi.
No. 45004.
Supreme Court of Mississippi.
December 9, 1968.
Oscar P. LaBarre, Vicksburg, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty Gen. and Laurence Y. Mellen, Special Asst. Atty. Gen., Jackson, for appellee.
ETHRIDGE, Chief Justice:
Jerry Nevels, appellant, was convicted in the Circuit Court of Warren County of grand larceny (the theft of twenty-five rolls of barbed wire) and sentenced to serve four years in the penitentiary.
State Highway Patrolman Langford around midnight was driving north on U.S. Highway 61 above Vicksburg, when he passed going in the opposite direction a heavy loaded automobile weaving across the center line. He turned and pursued the car, which was occupied by Nevels and another man. It turned in a driveway to a church, hit a post, and the patrolman came up behind it. The two occupants jumped out of the car and ran. Langford called on his radio for assistance, and after a short time a deputy sheriff arrived with two bloodhounds. Without opening the car doors, Patrolman Langford could see rolls of barbed wire in the car and in the raised trunk. When the dogs started barking, Nevels came out of the bushes and through *530 the fence, and said, "Mr. Langford, I was going to give myself up anyway." Langford knew defendant's last name, and asked him what his first name was. The following then occurred:
* * * I asked him, "Jerry, is it your car? Whose car it is?" He said, "No, sir, I stole the car." And I said, "What about the wire?" He said, "I stole it." And I said, "Where did you get the wire from?" And he said, "I think International Paper Company owned it." So he went on and told me several more things.
Subsequently, Langford advised Nevels that he did not have to say anything, if he did it might be used against him, and that he was entitled to an attorney, at the State's expense if he could not afford one. He then asked Nevels whether he would show him where he got the wire, and with his agreement, they drove by the International Paper Company plant. Nevels showed Langford the remainder of the stack of barbed wire, which was on the Illinois Central right-of-way and belonged to the railroad.
Under all of these circumstances, the trial court admitted in evidence Nevels' confession as being volunteered and spontaneously given immediately after he came under the fence. The confession was properly admissible in evidence, not being in violation of the Miranda rule. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda states:
In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. (384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726).
In the instant case, the statements were given "freely and voluntarily without any compelling influences." These initial admissions by defendant, as he walked toward the patrolman, in which he confessed to the crime of stealing the wire, were "volunteered statements" not barred by the Fifth Amendment. Nor do we think that the subsequent conversation of Nevels with Patrolman Langford affects the admissibility of Nevels' volunteered statements. It was substantially within another Miranda exception, general on-the-scene investigation and questioning as to facts surrounding a crime. 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725. To the very limited extent, if any, that it was not of this nature, it was cumulative and entirely harmless. Miss.Sup.Ct.Rule 11 (1967); see Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
State v. Gosser, 50 N.J. 438, 236 A.2d 377 (1967), somewhat analogous to the present case, states:
The decision [Miranda] recognized, however, at least two exceptions. One is general on-the-scene questioning as to facts surrounding a crime, and the other, statements freely volunteered without compelling influences. 384 U.S. at pp. 477-478, 86 S.Ct. at p. 1629, 16 L.Ed.2d at pp. 725-726. Defendant's statements that he had killed or shot his wife made to the first arriving policeman and then to the sergeant clearly fall in the first category and defendant does not here complain about their admission, as well he could not. While those testified to by the physician and county detective may be said to have been made while in custody, the proof is uncontradicted that they *531 were completely volunteered and not the product of any interrogation and so come within the second exception. (50 N.J. at 446, 236 A.2d at 381).
See also Stone v. United States, 385 F.2d 713 (10th Cir.1967); United States v. Cruz, 265 F. Supp. 15 (U.S.D.C. Texas 1967).
We do not need to consider in this case the effect in state cases, if any, of the new rules governing admissibility of confessions in federal prosecutions, established by Congress in the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C.A. § 3501 (1968). Since the evidence was ample to sustain the conviction, and there were no reversible errors, the case is affirmed.
Affirmed.
All Justices concur.