MAY, J.
The plaintiff, an attorney, appeals an adverse summary judgment in an action to recover fees and costs incurred in representing one of the defendants, Carl Dore-lien. He raises numerous arguments, but ultimately the appeal involves a single issue — the trial court erred in granting the defendants’ motion for summary judgment. We agree and reverse.
On January 25, 2003, Carl Dorelien was detained in Krome Detention Center awaiting deportation to Haiti to serve a life sentence, having been convicted of participating in the “Raboteau massacre.” On the same date, he was served with a summons and complaint in a civil action pending in the United States District Court for *305 the Southern District of Florida brought by survivors of one of the massacre victims. Carl also happened to have won the Florida Lottery in 1997.
After Carl was deported, his wife, Marie-Carline, and son Didier met with the plaintiff concerning legal representation of Carl in the federal case and conversion of his lottery winnings from an annual to a lump sum payment. Because Marie-Car-line did not speak English, Didier translated during the meeting. Marie-Carline agreed to pay the plaintiff a $850 hourly rate and a partial retainer fee of $5,000 with the remaining $95,000 retainer to be paid by May 30th from the proceeds of the lottery conversion. Marie-Carline signed the Authority to Represent on February 8, 2003.
Thereafter, the defendant Didier and another son, Giovanni, communicated frequently by e-mail and regular mail. By March, however, it became clear that the family was concerned about the fees and wanted more detail about the progress of the litigation. On March 27, 2003, Giovanni, purportedly a law student, sent the following e-mail to the plaintiff.
I am writing this email to inform about the positive outcome of the family debate held last night. After a long discussion, my family came to the conclusion that this lawsuit is of tremendous significance and needs to be address [sic] properly and promptly. Therefore, we have decided to retain your services ....
Although the lawsuit and its potential financial ramifications might be damaging, my family views it as an opportunity, a channel to export to truth. Yet towards this goal, it is important to secure a lawyer who will not only believe in the truth but who will loudly defend it. Didier and I attested that you are the man for the job. Therefore, I join my family in expressing our unconditional support.
We also addressed the legal fees. I believe that my mother spoke to Mr. Laham regarding this subject. Let me clarify one thing, we have embraced your offer to reduce your legal fees to $275 per hour. We also agreed to pay the balance owed in full. Most important of all, we have decided to go ahead and sell the lottery. We spoke to my father last night. Although he disagreed with our legal approach, he accepted to support our decision. This is not set in stone, but rest assure [sic] that you will receive the final response tomorrow, Friday, once we verify that he signed the legal documents.
According to the complaint, between February and April, the plaintiff expended considerable time researching issues, working on the lottery conversion, and appearing in federal court. The plaintiff also exchanged e-mails with a man in Haiti, representing Carl. Nevertheless, Carl refused to sign the plaintiffs retainer agreement.
On April 10th, Didier discharged the plaintiff and refused to pay the attorney’s fees and costs incurred. The plaintiff withdrew as counsel in the federal case, ceased work on the lottery conversion, and made written demand for the fees and costs. On May 8th, the plaintiff filed an eleven-count complaint against Carl, Marie-Carline, Didier, and Giovanni, alleging breach of express and implied contract, fraud, misrepresentation, and conspiracy to defraud. The complaint sought to hold the defendants jointly and severally liable for attorney’s fees and costs, and other damages.
Ultimately, Didier and Giovanni (the sons) filed a motion for summary judgment. They asserted: (1) the plaintiff did not work on their behalf; (2) the plaintiff *306 failed to allege any specific conduct on their part to support a conspiracy to defraud; (3) they never agreed to pay the plaintiff for services on behalf of their father; (4) they did not sign the only document supporting a relationship between the Dorelien family and the plaintiff. The sons provided identical affidavits supporting these assertions.
The plaintiff moved to dismiss the motion for summary judgment and to strike their affidavits. He also filed an affidavit in opposition. At the hearing on the motion, the Court stated:
Gentlemen, I have read all of the materials submitted to the Court. I’ve read the entire contents of both files and I have come to the following conclusion that as to the Motion for Summary Judgment in reference to Didier Dore-lien and Giovanni Dorelien, the motion should be granted. Don’t be so shocked. I have gone through all of this, including the testimony from the last time before me. Every single thing in here tells me that the word “we” was used in the context of the culture of the Haitian people. But without a doubt the persons who are the client in this case is the father, who is Mr. Carl Dorelien and Marie-Carline Dorelien, she signed the agreement, but the two children, Didier and Giovanni did not. And all of these E-mails, all of this discussion keeps referring to the father did this, the father said that, the father was in control, notwithstanding the reality of his imprisonment in Haiti. Without a doubt the father was in control.
After plaintiffs counsel responded, the trial court stated:
Counsel, I am not going to entertain any further argument. The decision of the court is that the pleadings are insufficient, the pleadings and the contents of the official court file. And the documents submitted by the Plaintiff himself in opposition to the Motion for Summary Judgment confirm and support the Court’s opinion that the children Didier and Giovanni Dorelien did not assume responsibility for paying any of the costs or fees associated with the representation of their father, Carl or the mother Marie-Carline. The Motion for Summary is granted as to the two children. You go to trial as soon as possible.
In essence, the plaintiff argues on appeal that the trial court erred in granting the motion for summary judgment because the motion was facially insufficient, genuine issues of material fact existed, and the court improperly based its decision on an issue not raised in the motion (imposing a Haitian cultural interpretation on the words employed in the e-mail). We agree.
A final order granting a motion for summary judgment is reviewed de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Only when there is a showing “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law” is summary judgment proper. Fla. R. Civ. P. 1.510(c).
First, the sons’ motion for summary judgment merely alleged there were no issues of material fact, but neither the motion nor the affidavits set forth a specific basis for that conclusion. See Spinner ex rel. Spinner v. Wainer, 430 So.2d 595 (Fla. 4th DCA 1983). Second, the complaint raised legal issues: (1) whether the sons acted as agents of Carl and Marie-Carline; (2) whether an implied contract formed between the plaintiff and the sons; and (3) whether the sons misrepresented their intention to procure free legal counsel.
There is no requirement that an agreement for legal services be in writing, even *307 when a third party is taking responsibility for payment, unless a contingency fee is involved. R. Regulating Fla. Bar 4-1.5(d) — (f), 4 — 1.7(b). At the hearing on the motion for summary judgment, the plaintiff factually established face-to-face meetings between Didier and the plaintiff, and numerous e-mails and correspondence exchanged between the plaintiff and the sons. The sons demanded details of the federal litigation and suggested ways to defeat the case against their father. And, it was the sons who aggressively negotiated the plaintiffs fee in lieu of finding another attorney. Whether these facts established the formation of a contract was a question of fact that could not be decided on a motion for summary judgment.
And third, a plain reading of the correspondence revealed that the sons were well educated and fluent in English. It was the trial court that sua sponte imposed a Haitian cultural interpretation of the language employed in the communications. This was not an issue raised by the sons’ motion for summary judgment. As plaintiffs counsel argued at the hearing, had the motion raised the issue, the plaintiff could have countered with an expert on Haitian culture.
For these reasons, we reverse the summary judgment and remand the ease to the trial court.

Reversed and Remanded.

GUNTHER and HAZOURI, JJ., concur.